OPINION OF THE COURT
Harriet L. Thompson, J.
By a decision and order of this court, dated May 5, 2014 (1644 Broadway LLC v Jimenez, 43 Misc 3d 1229[A], 2014 NY Slip Op 50859[U] [Civ Ct, Kangs County 2014]), after substantial motion practice, the court denied the respondent’s motion to dismiss this proceeding as well as denied without prejudice the motion by the petitioner for use and occupancy pendente lite.
As described in the aforementioned decision and order of this court, the questions of law and issues of fact for trial were narrowly tailored based on the evidence presented and the evidence that was not presented by both parties (see id.). Specifically, the petitioner was required to produce the process server to offer testimony as to the facts and circumstances of service on “John Doe” at the premises; the nature and substance of the conversation, if any, between the process server and “John Doe” allegedly authorized to accept service; and the production of the evidence of all mailings that completed service pursuant to RPAPL 735. The burden then shifts to the respondent to produce evidence, including witnesses, if any, to rebut these contentions.
Moreover, this court is of the opinion that the petitioner was required to demonstrate that the respective deeds, namely, the referee’s deed and the subsequent deed, were properly “exhibited” to the respondent. Provided sufficient evidence is pre *889 sented that both deeds were, in fact, “exhibited” as described in the respective motion papers, it is the opinion of this court that the petitioner would have exceeded its statutory obligations and substituted service would be valid.
Additionally, one of the most important issue is whether the respondent was named and served as a necessary party in the foreclosure action, and as promulgated in statute and in case authority, whether the foreclosure action statutorily terminated the alleged written commercial lease agreement between the defaulting mortgagee/prior owner and the respondent. Suffice it to say, the hearing below was necessary because neither party during motion practice presented admissible evidence to prove whether the respondent was or was not named and served in the foreclosure action.
Lastly, if the above question is answered in the affirmative, the court need not go any further. The extinguishment of the leasehold interest establishes the petitioner’s right to possession through either a licensee summary proceeding or a month to month tenancy, provided the petitioner accepted monthly rent from the respondent. Then, there are still questions of fact about the authenticity of the lease agreement between the predecessor owner and the respondent (see infra at 904). Further, neither party addressed the lack of recording of this lease and its impact on the rights of the petitioner as a good faith purchaser for value without notice of the leasehold interest.
At the conclusion of the trial, the respondent requested time to order transcripts of the bench trial and to prepare a post-trial memorandum of law instead of verbal summation. Counsel for the petitioner strongly objected to this time. The petitioner claimed that the alleged frivolous claims in this case about the lease and extensive court delays allegedly by the respondent are grounds for the court to deny this relief.
As of April 1, 2015, the respondent did not serve the petitioner with a copy of the transcript and/or the memorandum of law.
On April 1, 2015, the petitioner moved by notice of motion returnable on April 15, 2015 to deem the trial concluded and for this court to make a decision based on the evidence presented at trial.
On April 15, 2015, by the stipulation of the respective attorneys, the motion was granted to the extent that posttrial memoranda of law were waived and the case was submitted for a decision.
*890 Trial Testimony
This bench trial, commenced on September 16, 2014 and concluded on December 16, 2014, revealed the following facts through oral testimony and real evidence.
The petitioner called Mohamed Ali, a member of the petitioner corporation, 1644 Broadway LLC, as its first witness. The witness testified that he obtained the subject property through a foreclosure sale; he was present at the closing and had personal knowledge of the facts. He testified that the deeds admitted into evidence as petitioner’s 1 and petitioner’s 2 were executed on the same day. The referee’s deed was the first deed transferring the property from the foreclosing bank to highest bidder at the foreclosure sale. The second deed transferred the property from the highest bidder to the petitioner. He stated that both were signed and executed by the respective parties within an hour at closing.
He claimed that he received the original deeds the next business day. The deed admitted into evidence as petitioner’s 1 is a certified bargain and sale deed with covenants against grantor’s acts dated May 12, 2014 that transferred all rights, title and interest in the demised premises located at 1644 Broadway, Brooklyn, New York 11207 from Abdul Salem Mohamed Mused as the highest bidder at the foreclosure sale to the petitioner corporation, 1644 Broadway LLC.
Subsequently, the referee’s deed was admitted into evidence, without objection, as petitioner’s exhibit 2, a deed dated April 2, 2013 between Kenneth W. Richardson, Esq., as Referee, and Abdul Salem Mohamed Mused as the highest bidder. The content of the deed specifically states that
“Eastern Savings Bank, FSB, as Plaintiff, against Keesha M. Fields, said defendants having addressed as set forth therein in a Supreme Court matter in the County of Kings under Index No. 12495/2008, foreclosing on a mortgage evidenced by a mortgage dated April 20, 2006, and recorded on December 5, 2006, which was assigned by JPMorgan Chase to Home Sales Inc. on February 1, 2007 and recorded on April 12, 2007, which was then transferred or assigned by Home Sales Inc. to Eastern Savings Bank FSB pursuant to an assignment of mortgage, dated May 20, 2008, and recorded in the registrar’s office on April 8, 2008 pursuant to a judgment and foreclosure and sale, dated September 19, 2012, and *891 entered in the foreclosure action on December 31, 2012 in consideration of the sum of $461,000.00, said being the highest sum bid at a public auction sale bid” by Mr. Abdul Salem Mohamed Mused.
This deed was certified on May 12, 2014 by the New York City Register. It should be noted here that both deeds were certified by the closing attorney at the closing pursuant to CPLR 2105.
Mr. Ali testified that on the following day, he went to the subject premises to speak to the tenant and to give the tenant a copy of the deed as required by law as proof that he is the new owner. He claimed that the individual in the store told him that he did not believe that he was the new owner. He insisted that he spoke with Mr. Jimenez and that Mr. Jimenez would not accept the papers.
He described the property as a small property with one store on the ground level and a one-bedroom apartment above.
Mr. Ali stated that he was the one who executed the legal documents in this case and as of the termination date of the notice to quit, dated April 4, 2013 effective on April 23, 2013, the respondent remained in the property, and he directed his attorneys to serve the notice of petition and petition. At the time of service, he claimed that there were three to four months due and that the monthly rent was $1,500. He testified that four months have been paid in the amount of $6,000 since the inception of his ownership, and the respondent now owes 18 months in rent arrears for a total sum of $27,000.
Mr. Ali testified that he has been in the real estate business for many years and owns 30 buildings. At least 22 to 24 of his buildings have commercial tenants. Mr. Ali testified that many of those properties had grocery stores like in this case. Some are occupied by large commercial tenants like Key Food and/or Associated Grocers chains. He stated that he owns properties in all five boroughs. The 1644 Broadway property is located in Bushwick, an up-and-coming neighborhood. He says that based on the gentrification of these neighborhoods, the rent for the commercial store in this case is well below market rent.
On voir dire, the witness testified that the Bushwick property was a good property because it contains a grocery store. It is between 1,300 to 1,400 square feet and is on a corner lot. He claims that the commercial rent for this store should be at a minimum of $3,500, and he could get a much higher rent for this location and store type. He asserted that $63,000 in rental *892 income would be a fair and marketable yearly rate for the subject premises.
Lastly, petitioner introduced into evidence as petitioner’s exhibit 5 a certified copy of the notice of sale in the foreclosure proceeding, dated October 15, 2013, which provides that “pursuant to a judgment of foreclosure and sale . . . the referee will sell at public auction ... on Thursday, February 21, 2013, at 2:30 p.m., the premises known as 1644 Broadway, Brooklyn, New York 11207. The approximate amount of the liens is $474,131.29.” This document contains the affidavits of service of all the junior lienholders including, but not limited to, Keesha M. Fields, Eric Michels, Moca Deli & Grocery, Kenneth W. Richardson, as Referee, and Bruce F. Povan, Esq., as the guardian ad litem for Keesha M. Fields.
On cross-examination, the witness acknowledged that there were six payments but there was no record of those payments. The respondent introduced into evidence respondent’s exhibit A, a copy of the check made payable to the owner, which was tendered by the respondent’s attorney, Peter J. Pruzan, on August 17, 2014. In addition, admitted into evidence as respondent’s exhibit B were a letter and a copy of a check and a letter dated September 9, 2014, showing an additional sum of money was paid to the petitioner in the sum of $1,400.
The witness also testified that he owned 2057 Fulton Street, which was very similar to the property in this case. He testified that the sum of $3,500 is the monthly rent for that subject premises. He indicated that the commercial store in this case was located seven to eight blocks from this other property and was approximately 550 to 650 square feet. He also affirmed that there was a lease for that property. He did not bring that lease with him to court on the date of trial. 2057 Fulton Street’s lease was negotiated with a real estate broker.
Additionally, the witness testified that he owned 1363 Fulton Street which was five to six blocks away, but did not bring a copy of that lease as evidence. He testified that the rent for that property was $4,100, was not a corner property, and was approximately 1,500 square feet. He rented this space for between $1,400 and $1,500 approximately seven years ago. Those comparables would be for that property and not the subject premises.
He testified that he visited the property prior to the purchase. He saw the deli, looked at the property, but paid little attention to the name on the property. After he sued them, he paid more attention to the property.
*893 He further testified that he went to the subject premises after the foreclosure and had both deeds at that time. He stated that he showed the individual who was at the property copies of both deeds.
On redirect, he testified that when he entered the store, he spoke to the cashier who was behind the counter. He told him he had purchased the property and that he was the new owner. He stated that the young man was the son of the owner; he told him that they were not going to pay the rent to him because many others have come to the store claiming that they were the owners of the property too. Mr. Ali further stated that he showed him his identification, told him his name and produced his driver’s license to prove his identity. The son of the respondent responded that he was not the owner, he did not believe him and would not take the deeds from him. After that, he stated that the young man would not talk to him, so he put the copies of the deeds on the counter and left them. While in the store, he said that he read the beer license and the certificate of authority posted in the property to get the real name of the respondent.
Mr. Ali further testified that after the sale, the highest bidder, his cousin, Mr. Abdul Salem Mohamed Mused, transferred the property to the petitioner on the date of his closing. At the end of redirect, the case was adjourned.
On November 10, 2014, the petitioner continued on its casein-chief. At that time, the attorney for the respondent conducted re-cross of Mr. Ali. Mr. Ali testified that he went to the store six to eight times. It was a corner store; it looked like a triangle. It was off Broadway and McDonald, 35 to 45 square feet in width. He acknowledged that the tenant was in possession and had an ongoing business. He stated that the tenant changed his sign from Mora Deli to Ammco. Afterwards, the petitioner rested on its case-in-chief.
On the trial date of November 10, 2014, the respondent commenced its case-in-chief. The respondent called, as his first witness, Bienvenido Jimenez, who stated that his principal place of business was located at 1644 Broadway, Brooklyn, New York, ground floor.
The respondent’s exhibit C, the alleged lease for the subject premises, dated September 1, 2003, with a term commencing on October 1, 2003 and terminating on September 30, 2023 at an annual rent of $16,800, was marked by the court. The witness testified that the previous owner, Harold Willis, and *894 himself were the parties to the lease and were the only parties that were present during the execution of the lease before the notary public on September 10, 2003. The witness testified that he and Mr. Willis signed the lease on September 30, 2003 notwithstanding the fact that the lease is dated September 1, 2003. The witness affirmed that the lease was a three-page document. Notwithstanding the lease, the sale of the business took place on September 29, 2003.
On voir dire of the document by the petitioner’s attorney, Mr. Bienvenido Jimenez stated that he and Mr. Willis signed the document before the notary as is his custom when he signs legal documents. It was Mr. Willis who had the notary public write the lease. According to the witness, the notary’s office was on Knickerbocker Avenue between Cornelia and Jefferson Avenues.
The respondent’s exhibit D, which is a copy of a property search from the New York City Department of Finance, Office of the City Register, was admitted into evidence with no objection.
Additionally, respondent’s exhibit E, also a search of the New York City Department of Finance, Office of the City Register, shows various mortgages and satisfactions of mortgages for the subject property and was admitted into evidence without any objection.
The witness further testified that he purchased the store and inventory on September 29, 2003. He produced respondent’s exhibit G, a bill of sale, as evidence that the store and inventory were transferred from Demetro Torres, also known as Demetro Torres-Rodriguez, to Bienvenido Jimenez on September 29, 2003.
He stated that the parties had been engaged in discussions prior to the sale. He recognized the signature of Mr. Torres, the former owner of the business, since he signed the papers in his presence. Annexed to the document marked as respondent’s exhibit G is a schedule of the bill of sale which included all of the machinery, fixtures, equipment, merchandise, stock, inventory and leasehold improvements to the property listed as 1 through 14. The witness stated the seller made no guarantees on the performance of the refrigerators and made no representations about the merchandise. He further stated that he paid $35,000 for the sale of the business; he gave part of the money up front and the balance was paid over time.
*895 On voir dire, the petitioner’s attorney objected to the introduction of a document based upon the fact that it was a photocopy but after further testimony, respondent’s exhibit G was admitted into evidence with no objection.
Moreover, the witness testified and admitted into evidence various rent receipts in the form of canceled checks, front and back, from June 15, 2009 through and including December 17, 2012 as respondent’s exhibit I. Commencing on or about April I, 2005, Keesha Fields, the granddaughter of the original owner, signed and deposited these various checks on behalf of the owner. The witness stated that sometimes the rent was paid by check and sometimes in cash payments. He alleged that at the time, Mr. Willis did provide receipts but sometimes did not sign some of the receipts. He further claimed that he sometimes wrote the rent receipts and Keesha Fields, the former owner’s granddaughter, would sign the receipts. So, some of these receipts are in his handwriting and some are in the handwriting of Mr. Willis and/or Keesha Fields. After voir dire, the documents marked as respondent’s exhibit H were admitted into evidence.
In addition, admitted into evidence as exhibit I are copies of 24 checks, as proof of rent payments for the store.
Mr. Jimenez further testified that on April 3, 2013, contrary to the contentions by the petitioner, he was not in the store and did not have any conversation with Mr. ALL He claims that he was in the Dominican Republic and produced a United States passport, admitted into evidence as respondent’s exhibit J, to substantiate that he was in the Dominican Republic from March 1, 2013 to May 16, 2013. The witness further testified that he was not served with any of the foreclosure papers and that the petitioner’s member, Mohamed Ali, did not give or show the deeds to him.
On cross-examination, the witness was presented with respondent’s exhibit C, the lease, specifically paragraph 43 of the rider. He claimed that he could not read the lease because he cannot read English. He said that he had no attorney when he signed the lease. It was Gustovo, Mr. Torres’ attorney, who prepared the lease. Additionally, the witness specifically referred to paragraph 36 (d) where it was stated that the tenant would be responsible for 33V2% of water effective 2007 and testified that he paid the charges from 2003 to 2007.
He claimed that he had paid the security but did not have a receipt for the security deposit. He acknowledged that the lease *896 term was for 20 years and that there was no annual rent increases for 20 years. He also acknowledged that the lease had no insurance requirements and no payment of real estate taxes.
On redirect, the witness testified that at one point, this was an abandoned neighborhood. He stated that he had offered to buy the place from Mr. Willis to no avail. He stated that Mr. Torres owned the business and he was one of his employees. The business was in operation for 8 to 10 years. He stated that Mr. Torres solicited him to take over the business; it was not his idea to assume the business.
He further testified that Mr. Willis asked him to help him out with the water bill notwithstanding the provision in the lease regarding no water charge. When Mr. Torres and he went to the notary, it was the notary that prepared the lease; he did not know if the notary was an attorney or not. He did state that the notary gave him an explanation about the terms of the lease.
There was no re-cross and certainly no redirect.
This case was adjourned to December 16, 2014 for a continued trial.
On December 16, 2014, the respondent continued its case-in-chief. The respondent called, as a second witness, Hero Jimenez. He testified that he has worked at the deli since it first opened in 2003. He indicated that on April 8, 2013, he was at the cash register in the store. On that day, the owner, Mr. Jimenez, was in the Dominican Republic for a couple of days. He confirmed that the owner, or “someone,” came into the property between 10:00 a.m. and 11:00 a.m. At first, he thought the new owner was a customer until he asked about the owner of the store. He said that he was told that he had bought the building and wanted them out of the store. He asked for proof of his ownership but he claimed that the owner never came back and while he was there, he was never shown any deed. He also asserts that the store was never served with any foreclosure papers.
The respondent’s exhibits LI through L3 are interior photographs of the store. He testified that he took the photographs before July 2014 and on the date of trial, the property looked the same. Many of the photographs show various angles of the subject premises.
On voir dire, the witness testified that the only change in the store was the outside valance which was installed four to seven *897 years ago. All the photographs were admitted into evidence. The yellow sign that was in the photograph changed four to five years ago.
On cross-examination, the witness testified that the owner never showed him the deed and the property was substantially the same for the past five years.
The witness also testified that he is in the store from 7:30 a.m. to noon at the cash register and, his father takes over from noon to 1:00 p.m. His duties entail maintenance and control of the stock room, he purchases and receives all stock and merchandise, and cleans up the property. He is at the store seven days a week from 7:00 a.m. to 5:00 p.m. and makes a regular salary.
There was no re-cross and accordingly, no redirect.
At the close of his testimony, the respondent rested on its case-in-chief.
On the same day, the petitioner began its rebuttal testimony. The petitioner called Mohamed Ali, once again. He repeated his prior testimony. He did state that after he closed, on the next day, he went to the premises to inform the respondent of his new ownership of the property. He claimed that he showed the young man at the cash register the deeds. The witness said that the young man shoved it back at him, and said that he did not want to accept the deeds. He left them on the counter and exited the store. He further stated that the young man said he did not want to talk to him. After this event, they had no further contact.
He claimed that he saw his father at the store, notwithstanding the claims by the father that he was in the Dominican Republic. He states that the man had black skin and was on the second floor. This individual is about 50 to 60 years old, and between 150 to 160 pounds. He stated that the young man told him that his father was not there but in the Dominican Republic.
He further stated, contrary to the contentions of the respondent, the sign with the new name of the business was not installed on the exterior of the premises until after he had come to court on September 16, 2014.
On cross-examination, the witness reiterated his former testimony.
On redirect, he rehashed the testimony about his actions prior to the purchase of the property. He further stated that *898 after he obtained copies of the deeds, he went to the premises to “exhibit” them to the tenant but they were refused by the cashier. At the conclusion of his testimony, the trial ended.
On that same day, both of the attorneys presented their summations. The petitioner’s attorney moved to strike the defense of a lease pursuant to Real Property Law § 291-c. The attorney asserted that the purported lease that is greater than three years constitutes a conveyance and that all conveyances must be recorded in accordance with article 9 of the Real Property Law. Due to statutory violations, the defense of the lease is invalid.
The respondent did not elect to make any summation but wanted to submit a posttrial memorandum. The respondent agreed to order the transcripts of the trial. The parties agreed to hand deliver a copy of the transcript and any posttrial memorandum of law to chambers. As provided above, in a two-attorney stipulation after motion practice, the parties waived their rights to submit posttrial briefs and this case was submitted sub judice for a determination.
The court issued an order on the record that required the payment of use and occupancy pending a final determination.
Findings of Fact and Conclusions of Law
After a three-day bench trial, the court had ample opportunity to observe and assess the credibility of the witnesses based on their appearance, attitude, conduct, demeanor and temperament. After the assessment of the credibility of the witnesses and the documentary evidence submitted in support of their claims in the petition and the affirmative defenses in the respondent’s answer, the court makes the following findings of fact and conclusions of law.
Contrary to the respondent’s and petitioner’s claims in this proceeding, there is conflicting authority about whether there is an absolute requirement that the deed be personally delivered to the respondent in a post foreclosure eviction proceeding. Although RPAPL 713 dictates that the notice to quit may be served in the like manner as the notice of petition and petition, the service of the certified or original deed may not be served in such a manner. For example, in this department, the Appellate Term made it clear in Home Loan Servs., Inc. v Moskowitz (31 Misc 3d 37 [2011]), that service of the notice to quit with the accompanying certified referee’s deed, *899 by conspicuous place delivery, after four attempts at personal service, was insufficient as a matter of law to comply with the statutory requirements in RPAPL 713 (5) that the deed be “exhibited” to the respondents. (See also Investec Bank PLC v Elite Intl. Fin., Ltd., 42 Misc 3d 1207[A], 2014 NY Slip Op 50003[U] [Civ Ct, NY County 2014] [granting a motion to dismiss by the respondent based on conspicuous place service of the referee’s deed]; IFS Props. LLC v Willins, 41 Misc 3d 370 [2013] [dismissing the petition for failure to exhibit the referee’s deed but instead exhibited the special/limited warranty deed]; Rome v White, 82 Misc 2d 356 [Civ Ct, NY County 1975] [finding that service of a photostatic copy of the referee’s deed was fatal]; but see Hudson City Sav. Bank v Lorenz, 39 Misc 3d 538 [Suffolk Dist Ct 2013] [finding that nail and mail service of both the notice to quit and pleadings was deemed sufficient].)
For the purposes of this case, U.S. Bank N.A. v Eichenholtz (37 Misc 3d 536 [Yorktown Just Ct 2012]) determined that service of the deed and notice to quit by delivery to a person of suitable age and discretion was insufficient to meet the requirement of exhibiting deed pursuant to RPAPL 713 (5) (Colony Mtge. Bankers v Mercado, 192 Misc 2d 704 [Sup Ct, Westchester County 2002] [holding substitute delivery insufficient to comply with the RPAPL 713 (5) requirement to exhibit the deed]).
Based on the rationale of District Court Judge Stephen Hackeling in Hudson City Sav. Bank v Lorenz, relying, inter alia, on Bergman, New York Mortgage Foreclosures (Matthew Bender & Co., Inc. 2006),
“[t]o judicially determine that ‘personal exhibition’ is required as a precondition to commencing a summary proceeding would create a higher standard of service for the presentment of the deed than is needed for the notice of petition in an eviction proceeding. Such a requirement would enable foreclosed occupants to frustrate the court’s judgment by simply making themselves unavailable for in hand service. Indeed, it appears illogical to conclude that foreclosed owners can be stripped of their ownership and equity of redemption via substituted service and yet cannot be removed from the premises unless all others owners [are] ‘personally’ exhibited a copy of the original deed” (39 Misc 3d at 545 [citation omitted]).
*900 He concludes that “[ajbsent language in the statute or its legislative history, a judicially created finding of a legislative determination to apply such a different standard to the service of these different documents is unsupportable. (See also GRP/AG REO 2004-1, LLC v Friedman, 8 Misc 3d 317 [Ramapo Just Ct 2005].)” (Hudson City Sav. Bank v Lorenz, 39 Misc 3d at 545.)
This court distinguishes the instant case from these above cases declining to accept substitute service under RPAPL 735 as a basis for proper service of post foreclosure notices to quit in compliance with RPAPL 713 (5). The facts here present ample justification to sustain service of the deeds by substituted service and this court declines to follow U.S. Bank N.A. v Eichenholtz and Colony Mtge. Bankers v Mercado, holding substitute delivery insufficient to comply with the RPAPL 713 (5) requirement to “exhibit” the deed.
Specifically, the court finds credible the testimony of Mohamed Ali, a real estate developer and property owner, that he properly “exhibited” a copy of the deed of foreclosure (referee’s deed) and the subsequent deed from the highest bidder to the petitioner, to the respondent’s employee, his son, Hero Jimenez, an authorized agent with apparent and actual authority to accept service on behalf of his father’s business and his father individually. CPLR 311 (a) (1) as well as RPAPL 735 (1) (b) explicitly provide that a licensed process server may serve the officer, director, managing or general agent or cashier or assistant cashier or any other agent duly authorized by the corporation or the law in the State of New York (see also Business Corporation Law §§ 306, 307). In this case, although the petitioner did not produce the process server, the new owner, prior to the commencement of the proceeding, left copies of the deeds with Hero Jimenez at the cashier’s counter. The court finds credible the testimony of Mr. Ali that Mr. Jimenez’s son, Hero Jimenez, refused to give his name and refused to accept the deeds. Since Mr. Jimenez’s son told him that there were others that claimed to have purchased the property since it was in foreclosure for years, his son’s reactions would not be considered unreasonable; however, it was his obligation as the cashier and agent for the respondent, his father, to take the documents subject to verification. He did not believe that Mr. Ali was the new owner and his mistaken belief prompted him to not talk to Mr. Ali and not take the deeds.
Additionally, Mr. Ali affirmed that he obtained the name of the business operating at the subject premises from the license *901 that is required to be displayed by any New York corporation authorized to dispense or serve food and/or alcoholic beverages. The court also finds this statement credible based on the fact that the exact name of the store was misspelled in the foreclosure action. Mr. Ali needed the correct name of the respondent for the purposes of this special proceeding, where the name of the occupant in possession is essential to the recovery of possession.
The court did not find credible the testimony of the respondent’s son that he was not “exhibited” the deeds. The witness, his son, is an interested party in this proceeding and his action demonstrates his inherent bias. He denied service to protect his father, the business and his own salary particularly since his father was out of the country on the date that Mr. Ali came to the property. Although the court did not find his testimony totally unbelievable, he was very defensive, somewhat evasive and not forthcoming with certain facts on the witness stand. The court can only presume that he was not cooperative with the petitioner because the petitioner told him outright that he “wanted them out.”
In addition, the court compared the description of the individual stated in the affidavit of service by the process server and the respondent’s son in court, and concludes that his son fits the description of the individual served by the licensed process server at the premises. The court observed his height, approximate weight, hair and skin color. The affidavit of service of both the notice of petition and petition, and the 10-day notice to quit explicitly states that the individual looked like the following: a male, brown skin, black hair, age 36 to 50, height five feet, four inches to five feet, seven inches and weighed approximately 100 to 130 pounds. The individual that appeared in the court closely and accurately fits the description of the individual described in the affidavits.
Of equal significance, he described all of his various duties that he performed at the subject premises on behalf of the business including, but not limited to, operating the cash register and the New York State Lottery machine, accepting receivables, paying for produce, and cleaning, when necessary, the exterior and interior of the demised premises. His job at the store and his relationship with the store owner lead this court to conclude that he was granted actual and apparent authority to accept service of process on behalf of his father and the corporation. Notwithstanding his refusal to accept the *902 deeds, the acts by the new owner of leaving the deeds on the countertop constitute “exhibition” of the deeds to the respondent in conformity with RPAPL 713 (5).
As to the testimony of Mr. Bienvenido Antonio Jimenez, the court finds that the passport admitted into evidence as respondent’s exhibit J substantiates that he was not in the country on the dates alleged by the petitioner. The passport clearly demonstrates he was out of the country from March 1, 2013 to May 16, 2013. As the evidence shows in the record, the process server, Peter Stoute, license number 0971859, effectuated service of the notice of petition and petition on May 8, 2013; thus, his claim that he was out of the country at the time that the case was commenced is true.
It was proved by real evidence that the respondent was out of the country on the date of service of process. The petitioner should not be deprived of possession of the premises simply because he was unavailable to “exhibit” the certified deeds to Mr. Jimenez personally. To impose this burden on the petitioner would be onerous and unsupported by legislative history. (Hudson City Sav. Bank v Lorenz.)
Therefore, in light of the above facts, the court finds that the deeds were exhibited to the respondent not only on the date that Mr. Ali came to the premises as the new owner and left them on the cashier counter after refusal by the owner’s son to accept same, but also when the process server effectuated service of process on April 8, 2013 by substituted service on the identical individual, Hero Jimenez.
Notwithstanding the lack of proof of the certified mail receipts, the respondent did not object to the lack of this evidence and never raised that issue as a substantive defense in his pleading and therefore, any objection to the lack of this evidence is waived. The respondent merely denied receipt of the respective pleadings; he explicitly claimed no one at the premises was served as claimed in the affidavits of service. The answer states that there was no attempt to effectuate personal services at the premises, but the evidence completely refutes that claim. Not only did the evidence show that someone was actually served at the property, the above facts support the finding by the court that the individual served was the son of the store owner.
In sum, the deeds have been twice “exhibited” to the respondent, and the court sustains proper service of process of all the pleadings.
*903 Under New York law, an occupant who is not joined as a party to the foreclosure action is not bound by the judgment of foreclosure, and more significantly for this proceeding, the foreclosure action does not extinguish any leasehold interest of the occupant. RPAPL 1311 requires that the plaintiff in the foreclosure action join as a party defendant, any party “whose interest [has been] claimed to be subject and subordinate to the plaintiff’s lien.” Under the aforementioned statute, these necessary and vital parties include “[e]very person having an estate or interest in possession ... in the property as tenant in fee, for life, by the curtesy, or for years,” as well as all junior lienholders (RPAPL 1311 [1], [3]). (For the other issues of law in the court’s analysis of this particular provision of the statute see 1644 Broadway LLC v Jimenez [43 Misc 3d 1229(A), 2014 NY Slip Op 50859(U), *9-10].)
The affidavits of service admitted into evidence as petitioner’s exhibit 3, exhibit 4 and exhibit 5 prove that the deli in this proceeding, Moca Deli & Grocery, was served with the foreclosure summons and complaint, notice of pendency and notice of foreclosure in accordance with RPAPL 1301, 1303, and 1331 and additionally, as shown in petitioner’s exhibit 5, the respondent was also notified and served with the notice of sale of the subject premises on Thursday, February 21, 2013, at 2:30 p.m. in the Supreme Court of the State of New York in Kings County. As equally important, the individual served with the summons and complaint and notice of pendency, as described in the certified affidavits of service, matches the description of the individual that was served with the pleadings in this summary proceeding. The description accurately describes the respondent’s son, the cashier and individual in the store on the date and time of service, Hero Jimenez.
The evidence is irrefutable that the respondent was named and served in the foreclosure action and the law clearly provides that the entry of the judgment and foreclosure, under the facts and circumstances in this case, extinguishes any leasehold interest of any party in possession. Therefore, the petitioner having admitted certified evidence from the Kings County Clerk that the respondent was named and served in that foreclosure action, the lease agreement that was admitted into evidence as respondent’s exhibit D is terminated as a matter of fact and law, is deemed void as against the good faith purchaser for value of these premises at the foreclosure sale, namely, the petitioner’s predecessor in interest, Mr. Mused, and now the petitioner.
*904 In addition, in the decision and order of this court, Real Property Law § 291 mandates that in order for respondent’s lease, which is in excess of three years, to be deemed valid against a good faith purchaser for value, the lease must have been recorded, thereby giving notice to all parties that the property is subject to their lien. In this instance, and as stated by the court in the aforementioned decision, the respondent never recorded this “sweetheart deal.” Were this a valid conveyance, the respondent certainly should have recorded the lease not only to protect his interest but also to put the bank and all interested parties on notice that there was a lien that was in existence against the property. It is the opinion of this court that the bank had actual knowledge that the deli was in possession because its rights to possession were open and quite apparent since its name was clearly displayed on the exterior awning of the property. Based on that fact alone, and that the certificate of occupancy showed that there was a commercial occupant that probably had a lease in effect, the bank named and served the respondent with the underlying summons and complaint and notice of pendency. Therefore, in order for that lease to have been valid against any subsequent purchasers, it was required to be recorded, and since it was not recorded, it is void against the highest bidder and his successor, the petitioner.
As further described in the decision and order of this court, there is one exception: when a subsequent purchaser for value has actual notice of a tenancy, the failure to record the lease with a term of three or more years will neither impact the lease nor the tenancy. The rationale for such exception is that actual possession of the real estate is notice to all of the world of the existence of any right which the person in possession is able to establish. So, in this case, since the bank was on actual notice that the respondent was in possession, the bank named and served him in the foreclosure proceeding extinguishing the lease agreement as a matter of law. Accordingly, the court is not required to make any determination of the authenticity of the lease.
The documentary evidence here also demonstrates, and was not contradicted by the respondent, that the name of the business is Moca Deli & Grocery and the court finds that the name of the business, as described in the affidavits of service here and the foreclosure action, as “Mora Deli and Groceries a/k/a John Doe No. 2,” is a minor deviation in the spelling of the name of the respondent.
*905 CPLR 2001 maintains that “[a]t any stage of an action . . . the court may permit a mistake, omission, defect or irregularity . . . to be corrected, upon such terms as may be just.” This section is supportive of the policy in this state that just determination shall be based on matters of substance, not form, and to the ultimate end of justice that slight mistakes or irregularities shall not invalidate proceedings.
As significant, there are other related provisions in the CPLR that should also be reviewed to this end. CPLR 5512 (a) and 5520 make express provision for similar relief in connection with omissions or defects in taking appeals. CPLR 3026 expressly mandates that pleadings shall be liberally construed and that defects in pleadings shall be ignored if a substantial right of a party is not prejudiced. The reader should generally review the Practice Commentaries in the CPLR under these respective statutory provisions (also see Siegel, NY Prac § 6 et seq. [2d ed]). These statutes are routinely enforced by our courts and more recently, the Appellate Division, Second Department, reaffirmed the underlying policy of the Court in an election law case where the Court found that the Supreme Court properly amended a caption to designate an individual, who originally was denominated respondent, as petitioner on the grounds that “[d] efects, mistakes, and irregularities in pleadings are to be ignored by the court absent a showing of prejudice.” (Matter of MacKay v Johnson, 54 AD3d 428, 430 [2008]; Hoot Group, Inc. v Coplan, 9 AD3d 448 [2004] [finding in a case where the plaintiff properly commenced this action in the Supreme Court, Dutchess County and the summons and complaint incorrectly bore a “County Court, Dutchess County” caption, this ministerial error provided no basis for disturbing a money judgment granted for plaintiff by way of summary judgment].) “Defects, mistakes, and irregularities in pleadings are to be ignored by the court absent a showing of prejudice” (First Wis. Trust Co. v Hakimian, 237 AD2d 249, 249 [1997] [where the defendant failed to demonstrate that he incurred any prejudice as a result of the incorrect caption on the summons and complaint. Indeed, he timely answered the complaint and opposed the motion for summary judgment]; see CPLR 104, 2001, 2101 [f]; 3025 [c]; 3026).
Pursuant to CPLR 2001 and the above case authority, this court will ignore this slight misspelling in the name of the respondent (Mora Deli and Grocery in the Supreme Court action) and finds that the entity served in the Supreme Court ac *906 tion is the same entity that has been served in this summary proceeding, namely, Moca Deli & Grocery (see also the business check submitted by the respondent as exhibits A and I).
Notwithstanding the testimony by the petitioner as a real estate speculator and investor and some indicia of expertise on his behalf, the appropriate compárables for commercial rentals in the area were not presented: to the court in proper form. Although the petitioner attempted to analogize a property that he owns at 2057 Fulton Street at a monthly rent of $3,500 to this property, there was no evidence presented to prove this claim. His testimony that this property is only seven to eight blocks away and was approximately the same size as the subject property is insufficient evidence to deem that testimony sufficient to warrant any payment in use and occupancy in excess of the amount that has been paid by the respondent during this tenancy. Accordingly, based on the facts above, the court determines that use and occupancy for the subject premises is the sum of $1,400 as described in the purported lease and rent payments. According to the certified copy of the deed, dated April 2, 2013, the petitioner is entitled to use and occupancy from April 3, 2013 through and including December 31, 2014 (21 months). The petitioner acknowledged that the respondent made four payments during the last 18 months for a total of $6,000. The respondent, on the other hand, did not produce any evidence of those payments. The respondent did produce copies, admitted into evidence as respondent’s A and B, checks that were earmarked “August use and occupancy” and “September use and occupancy” in 2014. Therefore, the respondent’s evidence did not substantiate the total payments, but the landlord acknowledged payments in the sum of $6,000 and the court will grant the respondent credit for those payments.
Based on the above evidence and mathematics, the respondent owed the sum of $29,400 which represents the monthly use and occupancy in the sum of $1,400 from April 3, 2013 through and including December 31, 2014, less the payments of $6,000, which equals the sum of $23,400. Since the court has ordered the payment of use and occupancy posttrial and no motion being made to include posttrial use and occupancy, the court will only award monetary relief for this time frame.
For all the foregoing reasons, the court finds that the petitioner has sustained its burden of proof of proper service of process of the pleadings in these summary proceedings and the *907 right to possession of the demised premises. Accordingly, the court grants the petitioner a final judgment of possession and a money judgment in the sum of $23,400, with the warrant to issue forthwith and the execution stayed six months for the respondent to wind down the business at the subject premises and relocate to an alternative property. As to the money judgment in the sum of $23,400, the court grants the respondent 30 days from the date of service of this decision and order with notice of entry to pay the judgment amount.
In the court’s discretion, the respondent is granted the statutory six-month stay of the execution of the warrant of eviction based on the fact that the respondent has been a long-term tenant in occupancy of these premises from at least October 1, 2003 which was evidenced by the sales agreement between Demetro Torres and Mr. Bienvenido Jimenez, dated September 29, 2003. The respondent, based on his testimony, has invested an undisclosed amount into the subject property, and based on the fact that the respondent purchased the subject business for $32,500, the respondent should be given ample opportunity to wind down the business and to relocate.
As a condition to the stay of the execution of the warrant of eviction, the respondent is directed to pay the use and occupancy in the sum of $1,400 during the stay of the execution of the warrant of eviction. On the failure of the respondent to pay this sum, the warrant may execute after the simultaneous service of a notice of default to the respondent’s attorney and a notice of eviction by the New York City Marshal.